IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03207-CMA-NRN

TERANCE D. WILSON,

Plaintiff,

v.

JEFF LONG, Warden, S.C.F.,
DEAN WILLIAMS, Executive Director, CDOC,
OSVALDO SOTO, C.S.P.,
CO. NATHAN LARIMORE, C.C.F.,
SGT. SOTO, C.C.F.,
GRACE NOVOTNY, DOC OIG Chief Investigator,
CLINICIAN MERICK, C.C.F.,
CLINICIAN BENTON, C.C.F.,
LT. MINDI TRUJILLO, C.C.F.,
CO. HARRIS, C.C.F.,
CAPTAIN WALLACE, S.C.F., and
SGT. STICE, C.C.F.,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (DKT. #25);
PLAINTIFF'S "ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION AND
TEMPORARY RESTRAINING ORDER" (Dkt. #47); and
PLAINTIFF'S MOTION FOR LEAVE FOR LEAVE TO FILE AN AMENDED
COMPLAINT (Dkt. #54)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This prison civil rights case is before the Court pursuant to Orders (Dkt. #27, 48,

& 55) issued by Judge Christine M. Arguello referring three motions:

- Defendants Warden Jeff Long; Executive Director Dean Williams; Osvaldo Soto;
  C/O Nathan Larimore; Sgt. [Robert] Soto; Chief Investigator Grace Novotny;
  Clinician [Ashley] Merritt (incorrectly identified as Clinician Merick, C.C.F. in the

caption)[1]; Clinician [Luke] Bitton (incorrectly identified as Clinician Benton C.C.F. in the caption); Lt. Mindi Trujillo; C/O [Kristian] Harris; Captain [Jason] Wallace; and Sgt. [Jacob] Stice (collectively "Defendants") Motion to Dismiss Pursuant to Rule 12(b)(6) ("Motion to Dismiss"). (Dkt. #25.) Plaintiff Terance D. Wilson, proceeding pro se,[2] filed a response (Dkt. #38), and Defendants filed a reply. (Dkt. #43.)

- Plaintiff's "Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order" ("Motion for Preliminary Injunction") (Dkt. #47), to which Defendants responded (Dkt. #50), and Mr. Wilson replied. (Dkt. #51.)

- Plaintiff's Motion for Leave to File an Amended Complaint ("Motion to Amend") (Dkt. #54), to which Defendants responded.[3] (Dkt. #60.)

The Court has taken judicial notice of the docket and considered the applicable

Federal Rules of Civil Procedure and case law. Now, being fully informed and for the

reasons discussed below, the Court makes the following recommendations.

---

[1] The Court will use Defendants' correct names in this Report and Recommendation.

[2] Because Mr. Wilson proceeds pro se, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

[3] Although the time for Mr. Wilson to file a reply to the Motion to Amend has not yet lapsed, a judicial officer may rule on a motion at any time after it has been filed. D.C.COLO.LCivR 7.1(d).

## PROCEDURAL HISTORY

Mr. Wilson initiated this lawsuit on November 29, 2021. (Dkt. #1.) As general background,[4] Mr. Wilson, who is Black, was convicted of killing an alleged member of the Sureños street gang. He claims this has made him a target for violent retribution in the ten-plus years he has been incarcerated. Mr. Wilson alleges that guards and other employees of the Colorado Department of Corrections ("CDOC") have not only failed to protect him from harm, they have encouraged other inmates to assault him due to Mr. Wilson's history of filing grievances and lawsuits related to his conditions of confinement. Mr. Wilson asserts three claims under 42 U.S.C. § 1983.[5] First, he alleges Defendants Stice, Larimore, and Harris violated his Eighth Amendment rights by subjecting him to excessive force and cruel and unusual punishment on August 21, 2022. Mr. Wilson's second claim for relief is asserted against all Defendants[6] for being deliberately indifferent to an excessive risk to Mr. Wilson's health or safety and for failing to protect him from harm by other inmates. The final claim is brought against Defendants Bitton, Larimore, Trujillo, Wallace, Harris, Stice, Long, and both Sotos for retaliating against Mr. Wilson for exercising his First Amendment rights.

---

[4] The Court will address the specific incidents of alleged misconduct described in Mr. Wilson's Prisoner Complaint in its analysis of Defendants' Motion to Dismiss.

[5] 42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law.

[6] Although Defendants Larimore and Harris are not listed under the heading for this claim for relief, there are, as Defendants note, several allegations made against them.

Defendants moved to dismiss pursuant to Rule 12(b)(6) on February 22, 2022 (Dkt. #25), and discovery was stayed pending a final determination of the Motion to Dismiss. (Dkt. #29.) The Motion to Dismiss has been fully briefed.

On May 6, 2022, Mr. Wilson filed the Motion for Preliminary Injunction (Dkt. #47), which requests that Defendants be enjoined "from violating Plaintiff's 1st and 6th [A]mendment right to council [sic] and using the pod phone, retaliations, inciting physical assaults, racial animus, obstruction by 'evil intent' . . . ." The Court heard argument on this motion on May 19, 2022. (*See* Dkt. #49.)

Finally,[7] on June 24, 2022, Mr. Wilson moved to amend his Prisoner Complaint to add several new defendants and causes of actions. (*See* Dkt. #54-1.) The Motion to Amend is only three paragraphs long, while the proposed Amended Prisoner Complaint is almost 20 handwritten pages.

For comprehensibility's sake, the Court will address these motions out of order.

## MOTION TO AMEND (Dkt. #54)

Mr. Wilson's entire legal argument in support of his Motion to Amend is less than 100 words:

> Since the filing of the original complaint an aggressive campaign of terror has continued to retaliate and obstruct. Herein, plaintiff's complaint, is an updated complaint and the complaint is amended to reflect the nature of his conditions of confinement and to cure the deficiencies in the original complaint.

> This court should grant leave freely to amend a complaint. *Foman v. Davis,* 391 U.S. 178, 182 (1962).

---

[7] As is his wont, Mr. Wilson has also filed several other motions. (*See* Dkt. ##52, 57, & 59.) The Court will issue orders on these motions in due course.

(Dkt. #54.) To this Mr. Wilson attached a rambling proposed Amended Prisoner Complaint that adds at least 10 new defendants and features a nonlinear, hard-to-follow narrative.

Rule 15(a)(2) directs a trial court to "freely give leave [to amend a complaint] when justice so requires." It is a rule intended "to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Mintowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). With respect to pro se plaintiffs in particular, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. "In addition, pro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings." *Id.* at 1110 n.3.

However, if there is "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought" need not be granted. *Minter*, 451 F.3d at 1204 (quoting *Foman*, 371 U.S. at 182 ("The grant or denial of an opportunity to amend is within the discretion" of the trial court.)).

Delay is "undue" only if it will place an unwarranted burden on the Court or become prejudicial to the opposing party. *Minter*, 451 F.3d at 1205. "The important

inquiry is not simply whether Plaintiff has delayed, but whether such delay is undue." *Id.* The Tenth Circuit "focuses primarily on the reason for the delay." *Id.* at 1206. A motion to amend is untimely if, among other reasons, the moving party has made the complaint a "moving target." *Id.* (citations omitted). Courts will also find a delay to be undue when a movant lacks adequate explanation for the delay or when a movant knows or should have known of the facts in the proposed amendment but did not include them in the original complaint or any prior attempts to amend. *Id.* (citations omitted).

The Court finds that the Motion to Amend is unduly delayed. In the instant case, Mr. Wilson states that he filed his Motion to Amend "to cure the deficiencies in his original complaint" but does not explain why he waited until four months after the filing of Defendants' Motion to Dismiss, which put him on notice of any purported pleading defects, to do so. Instead, he chose to respond to the Motion to Dismiss. This failure cannot be chalked up to inexperience with the federal court system; Mr. Wilson is a seasoned pro se litigant and a prolific filer. Indeed, he filed several motions and other documents on the docket during this four-month period. Moreover, Mr. Wilson's perfunctory motion does not explain why he did not or could not include the additional defendants or new allegations in his original Prisoner Complaint.

The Court has first-hand experience of Mr. Wilson's history of making untimely motions to amend. For example, in *Wilson v. Johnson*, No. 19-cv-02279-CMA-NRN (D. Colo.), Mr. Wilson's court-appointed counsel filed a master amended complaint that consolidated claims asserted across four separate lawsuits. *Id.* at Dkt. #125. After Mr. Wilson terminated this representation, and over two-and-a-half years after he filed his original complaint, Mr. Wilson sought leave to amend for a fourth time. *Id.* at Dkt. #176.

This was request was flatly denied. *Id.* at Dkt. #187. In another case, *Wilson v. Romero*, No. 16-cv-02060-CMA-MJW (D. Colo. April 19, 2017), Dkt. #43, Mr. Wilson was permitted to file a fourth amended complaint, but was expressly "warned that this case must proceed. He cannot continue to amend his claims in order to avoid an adjudication on the merits of his claims." That is precisely what Mr. Wilson is attempting to do here.

The Court also finds that Defendants would be prejudiced if Mr. Wilson were given leave to amend. Prejudice is the most important factor in considering whether a plaintiff should be permitted to amend a complaint. *See Minter*, 451 F.3d at 1207. "Courts typically find prejudice when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* Insofar as the Court can discern comprehensible claims from Mr. Wilson's digressive proposed amended pleading, they appear to raise significant new factual allegations, including incidents occurring less than a month ago. (*See* Dkt. #54-1 at 10 ("I was assaulted several times due to Wallace's inaction & animus, from 9/21/21/ through 6/20/22 and continues.").)[8]

Finally, the Court agrees with Defendants that Plaintiff's Motion to Amend is futile. A proposed amendment is futile "if the complaint, as amended, would be subject to dismissal." *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278,

---

[8] The chronology set forth in the proposed Amended Prisoner Complaint is impossibly confused. For example, Mr. Wilson alleges that "on 7/25/22–8/13/22 on the Dr.'s put on record and into my medical file that Stice, Larimore and admin. were retaliating and harassing me to get me out of C.C.P. due to my lawsuits." (Dkt. #54-1 at 14.) The motion was filed in June 2022.

1288 (10th Cir. 2008) (quoting *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007)). "An amendment is futile only if it would not survive a motion to dismiss." *Bituminous Cas. Corp. v. Hartford Cas. Ins. Co.*, No. 12-cv-00043-WYD-KLM, 2013 WL 6676157, at *2 (D. Colo. Dec. 18, 2013) (citing *Bradley v. Val–Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)). The Court finds that the proposed Amended Prisoner Complaint would be subject to dismissal under Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also* Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct."). Although allowance may be made for some deficiencies in a pro se pleading, such as failure to cite appropriate legal authority or confusion of legal theories, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *see also Whitney*, 113 F.3d at 1173-74 (court will not "construct a legal theory on a plaintiff's behalf"); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir.1995) ("Judges are not like pigs, hunting for truffles buried in briefs.").

For these reasons, the Court recommends that Plaintiff's Motion to Amend (Dkt. #54) be **DENIED**.

## MOTION FOR PRELIMINARY INJUNCTION (Dkt. #47)

A preliminary injunction is not meant to "remedy past harm but to protect plaintiffs from irreparable injury that will surely result without [its] issuance" and "preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258, 1267 (10th Cir. 2005); *see also Hale v. Ashcroft*, 683 F.

Supp. 2d 1189, 1197 (D. Colo. 2009) ("injunctive relief can only be obtained for current or prospective injury and cannot be conditioned on a past injury that has already been remedied"). "[C]ourts generally will refuse to grant injunctive relief unless plaintiff demonstrates that there is no adequate legal remedy." Charles Alan Wright, et al., 11A *Fed. Prac. & Proc. Civ.* § 2944 (3rd ed. April 2021).

To obtain a preliminary injunction, a plaintiff must demonstrate four factors by a preponderance of the evidence: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distrib.*, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009).

The standard of proof varies depending on the type of injunction sought. "[T]he primary goal of a preliminary injunction is to preserve the pre-trial status quo." *RoDa Drilling Co.*, 552 F.3d at 1208. Therefore, where the injunction sought is prohibitory, i.e., requiring the nonmovant to stop acting in a manner that disturbs the status quo, the movant may be afforded relief under a lesser standard of proof on the likelihood-of-success-on-the-merits factor if he can show the other three requirements tip strongly in his favor. *Okla. ex rel Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1112–13 (10th Cir. 2006). Where the injunction sought is one of three types of disfavored injunctions, however, the movant must make a heightened showing to demonstrate entitlement to relief. *O Centro Espirita Beneficiente Uniao Do Vegetal v.*

*Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc), *aff'd and remanded*, 546 U.S. 418 (2006). The three disfavored injunctions are: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that he could recover at the conclusion of a full trial on the merits. *Schrier*, 427 F.3d at 1259. In these situations, the request must be more closely scrutinized to assure that the exigencies of the case require extraordinary interim relief. *O Centro*, 389 F.3d at 975, 978–979.

The Tenth Circuit has held that, "because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990)). Mr. Wilson's motion fails to demonstrate or identify any harm that is "certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quotation omitted). Mr. Wilson generally avers that "Defendant Chief Investigatory of the OIG is aware of" a pattern of violating "Plaintiff's 1st and 6th [A]mendment right to council [sic] and using the pod phone, retaliations, inciting physical assaults, racial animus, destruction by 'evil intent,'" and requests an order restraining Defendants "from preventing Plaintiff equal access to phone daily, retaliating, fomenting inmate assaults, threatening and intimidating Wilson' associated, communicating with Plaintiff without camera, . . . stop retaliating, refusing Plaintiff's mail, destructing, hindering, tampering with Plaintiff's legal and family communications." (Dkt. #47 at 1, 2.) However, he fails to

point to any evidence that "the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman*, 348 F.3d at 1189 (quotation omitted).

In his reply (Dkt. #51), Mr. Wilson cites the events that form the basis of this lawsuit. But these discrete past acts do not demonstrate a present need for equitable injunctive relief. Otherwise, preliminary injunctive relief would be available in almost every prison civil rights case. Mr. Wilson also describes other incidents unrelated to those alleged in his Prisoner Complaint. However, Mr. Wilson, as the party seeking preliminary injunctive relief, "must establish 'a relationship between the injury claimed in the party's [preliminary injunction] motion and the conduct asserted in the complaint.'" *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir.). He cannot meet this burden as the incidents involve different actors and occurred after and are unrelated to those alleged in his Prisoner Complaint. The Court again notes that this is a typical (and unsuccessful) litigation strategy employed by Mr. Wilson. *See, e.g., Wilson v. Tolentino*, 19-cv-03084-CMA-NRN, at Dkt. #59) (D. Colo. May 15, 2020) (adopting report and recommendation denying preliminary injunction motion); *Wilson v. Taylor*, 19-cv-03533-CMA-NRN, at Dkt. #46 (D. Colo. May 12, 2020) (the same).

Because Mr. Wilson has not shown an irreparable harm, he failed to demonstrate a clear and unequivocal right to relief. Therefore, Mr. Wilson's Motion for Preliminary Injunction can be denied without addressing the remaining preliminary injunction factors. *See Vill. of Logan v. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014) (unpublished) (noting that party's "failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted"); *Sierra Club, Inc.*

*v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013) (unpublished) (stating that "[a] party seeking a preliminary injunction must prove that all four of the equitable factors weigh in its favor").

Based on the foregoing, the Court recommends that Mr. Wilson's Motion for Preliminary Injunction (Dkt. #47) be **DENIED**.

## MOTION TO DISMISS (Dkt. #25)

Defendants filed the Motion to Dismiss on February 22, 2022. (Dkt. #25.) They ask the Court to dismiss Mr. Wilson's Prisoner Complaint pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted. Defendants note that Mr. Wilson is a "frequent filer" whose "*modus operandi* is to submit pleadings with a host of allegations and complaints, composed with varying degrees of (dis)organization, in hopes that during motion practice, opposing counsel and the Court will divine a viable legal action from his airing of grievances." (*Id.* at 2.)[9] Defendants argue that Mr. Wilson has failed to state a plausible claim for relief and/or has failed to establish the personal participation of the named individuals. They also request dismissal based on the doctrine of qualified immunity.

### I. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rule of Civil Procedure provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not

---

[9] The Court has also expressed some frustration with Mr. Wilson's scattershot pleading practices in another case. *See Wilson v. Johnson*, No. 19-cv-02279-CMA-NRN, 2020 WL 1875148, at *2 (D. Colo. Apr. 15, 2020) ("Mr. Wilson's practice of jumbling his claims together with little regard to his own organizational framework is evident throughout his Prisoner Complaint.").

to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Plausibility means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to

establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

At the same time, however, the "Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *Sylvia v. Wisler,* 875 F.3d 1307, 1326 (10th Cir. 2017) (internal quotation marks omitted). Even under *Iqbal/Twombly*, "that standard is still fundamentally one of notice pleading intended to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense." *Id.* A complaint need not provide detailed factual allegations; rather, "it must give just enough factual detail to provide 'fair notice of what the claim is and the grounds upon which it rests.'" *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555).

**II. Qualified Immunity**

Defendants argue they are entitled to qualified immunity because Mr. Wilson

failed to demonstrate that his federal constitutional rights were violated. "The doctrine of

qualified immunity protects government officials from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231

(2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the

Court must consider two elements: (1) whether the plaintiff has alleged a constitutional

violation, and (2) whether the violated right was "clearly established" at the time of the

violation. *Id.* at 230–31. "The judges of the district courts . . . [may] exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the particular case at hand." *Id.* at

236. Qualified immunity applies unless the plaintiff can satisfy both prongs of the

inquiry. *Id.* at 232.

When a defendant asserts the defense of qualified immunity, the burden shifts to

the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101,

1107 (10th Cir. 2009). However, it is important to bear in mind that because this

defense is being evaluated in relation to a Rule 12(b)(6) motion, Defendants are

subjected "to a more challenging standard of review than would apply on summary

judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (quoting *Peterson

v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). As a result, it is Defendants' conduct

"as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Id.*

(quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Thus, when "addressing the

issue [of qualified immunity] at the motion to dismiss and not the summary judgment stage, [a] [p]laintiff is only required to allege a constitutional violation that is plausible on its face." *Torres v. White*, No. 08CV196JHPFHM, 2009 WL 37617, at *2 (N.D. Okla. Jan. 6, 2009).[10]

### III. Analysis

The Court will address Mr. Wilson's three claims for relief in turn.

### a. Eighth Amendment Claims

Mr. Wilson alleges that Defendants Stice, Larimore, and Harris violated his Eighth Amendment rights by subjecting him to excessive force, and all Defendants violated his Eighth Amendment rights by failing to protect him from being assaulted by other inmates.

### 1. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "The use of excessive force by jail officials violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to an 'unnecessary and wanton infliction of pain.'" *Miller v. Glanz*, 948 F.2d 1562, 1566 (10th Cir. 1991) (quoting *Whitley*

---

[10] It is not uncommon for courts to defer ruling on qualified immunity until the summary judgment stage. *See*, *e.g.*, *Harvey v. Gonzalez*, No. 14-cv-02174-RBJ-NYW, 2015 WL 13730685, at *7 (D. Colo. Nov. 24, 2015), *report and recommendation adopted*, No. 14-cv-002174-RBJ-NYW, 2015 WL 9462057 (D. Colo. Dec. 28, 2015) (reasoning that ruling "on Defendant's assertion of qualified immunity . . . is an inquiry better suited for summary judgment once a factual record is developed."); *Torres v. White*, No. 08CV196JHPFHM, 2009 WL 37617, at *3 (N.D. Okla. Jan. 6, 2009) (same); *cf. Maxey by Maxey v. Fulton*, 890 F.2d 279, 281 (10th Cir. 1989) (district court's order denying Rule 12(b)(6) motion to dismiss "did not conclusively and finally deny [defendant]'s entitlement to qualified immunity, but merely deferred that issue pending development of a sufficient factual record").

*v. Albers*, 475 U.S. 312, 319 (1986)). What constitutes unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley*, 475 U.S. at 320).

An excessive force claim requires the Court to analyze two prongs: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotations and citations omitted). The objective element of the claim is "contextual and responsive to contemporary standards of decency." *Id.* (quoting *Hudson*, 503 U.S. at 8). In analyzing the subjective element of an excessive force claim, the core judicial inquiry examines whether the force was applied in a good-faith effort to maintain or restore discipline or whether it was applied maliciously and sadistically to cause harm. *See Whitley*, 475 U.S. at 320–21. When balancing the competing concerns of the subjective prong, the Court will consider that prison officials often make their decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Id.* (citing *Whitley*, 475 U.S. at 320). However, a prison official who observes the imposition of excessive force upon a prisoner at the hands of another but who take no steps to protect the prisoner can be liable under the Eighth Amendment. *See Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1224 (D. Colo. 2001) (citing *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994); *Sasa v. Zavaras*, 166 F.3d 1222 (10th Cir. 1998) (unpublished)).

Mr. Wilson's excessive force claim is brought against Defendants Stice, Larimore, and Harris. Specifically, Mr. Wilson alleges:

> On 8/21/21, while taking me to the shower C/O Larimore continued to call me a "rat" and puffing out his chest and telling me, "when are you going to do something?" I immediately knew to not respond. Then I went to my cell and reported this to PREA. After that in reprisal and to follow up on their threats, at yard on 8/21/21 Larimore, Harris and Stice assaulted plaintiff using excessive force. The whole time of the assault Larimore used racist threats and intimidations and he and Stice made comments to the effect, "what did we tell you about calling PREA.["] I was in handcuffs and shackles.

(Dkt. #1 at 9, ¶ 14.)

Mr. Wilson does not describe the "assault" in any more detail, meaning that neither the objective nor subjective prong of an excessive force claim has been sufficiently pled. Put differently, the Court cannot determine from reading the Prisoner Complaint what amount of force was used and whether it was necessary or proportionate. Mr. Wilson's first claim for relief contains the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that are unacceptable under *Iqbal. See* 556 U.S. at 678. This claim should be dismissed without prejudice.

### 2. Failure to Protect/Deliberate Indifference

A violation of the Eighth Amendment occurs when a prison official is deliberately indifferent to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Although prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury resulting from violence between inmates results in constitutional liability. *Id.* at 833–34. An inmate asserting an Eighth Amendment claim must demonstrate (1) that the harm was "sufficiently serious" under an objective standard, and (2) that the prison officials had "subjective knowledge of the risk of harm" but did nothing to prevent such harm. *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008).

First, to satisfy the objective component of the standard, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Next, to satisfy the subjective component of the standard, the inmate must show both that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and that the prison official did in fact "draw the inference." *Id.* at 837. "[D]eliberate indifference entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835 (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Turning to the Prisoner Complaint, it is immediately apparent that Mr. Wilson's deliberate indifference claim fails as to certain Defendants for lack of personal participation. Generally, to hold a government official individually liable under § 1983, the plaintiff must establish that the defendant had personal involvement in the alleged constitutional violation. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). In other words, there must be an affirmative link between the constitutional deprivation and the defendant's personal participation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

Defendants Merritt and Bitton, whom Mr. Wilson identifies as "clinicians," have no link to any constitutional violation. Mr. Wilson states in a conclusory fashion that Defendant Britton, along with some guards, "subjected the plaintiff to conditions and practices of constant reprisals[,] beating, threats of beatings and particularly repressive

tactics of retaliation" (Dkt. #1 at 7, ¶ 7), but he provides no further detail; indeed, Defendant Bitton is barely mentioned in the pleading. Moreover, Mr. Wilson explicitly exempts Defendant Merritt from responsibility for these retaliatory acts. (*See id.* ("Each expressly stated their disdain and contempt for my legal activities and intent to have me terminated from the program[11]; with the exception of [Merritt].").)

Other Defendants are apparently sued in their supervisory capacities.[12] A supervisor can only be held liable for his own deliberate intentional acts. *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."). There are three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Without an allegation of personal participation, a plaintiff does not state a claim for relief.

In paragraph 21 of his Prisoner Complaint, Mr. Wilson alleges that Defendants Williams, Novotny, Long, and Wallace are liable for a "general failure to train, supervise and control law enforcement," and that they "knew Plaintiff was being harmed and did not respond reasonably." (Dkt. #1 at 11, ¶ 21.) However, the bulk of this paragraph relates to Mr. Wilson's belief that Black inmates are singled out for unequal treatment in

---

[11] Although it is mentioned several times, Mr. Wilson never explains what this "program" is.

[12] These include Defendants Williams, Novotny, Long, and Wallace. Mr. Wilson also seems to allege that Defendants Bitton, Merritt, and O. Soto could also be liable under this theory, although these "clinicians" do not appear to have any responsibility for the management of prison affairs or other supervisory duties.

violation of the Equal Protection Clause of the Fourteenth Amendment. But the allegation of unequal treatment is not supported by any specific facts indicating that Mr. Wilson's constitutional rights were violated. Moreover, none of Mr. Wilson's three claims for relief are based on the Equal Protection Clause.

Mr. Wilson also alleges that Defendants Novotny and Williams are aware of a pattern of equal protection violations, excessive force, retaliations but did nothing about it. (*Id.* at 1 at 10, ¶ 18.) Given the lack of specificity as to these claims, Mr. Wilson does not meet the objective or subjective prongs of a deliberate indifference/failure to protect claim.

Mr. Wilson makes more specific claims as to other Defendants. He alleges that on April 21, 2022, Defendant O. Soto went to Mr. Wilson's cell and loudly discussed a "confidential" Prison Rape Elimination Act ("PREA") call, knowing that this violated state and federal regulations. (*Id.* at 7, ¶ 4.) He "winked and smile" at Mr. Wilson and "riled up the pod." (*Id.*) As a result, two days later Mr. Wilson was forced to defend himself against his "white supremacist" neighbor who believed Mr. Wilson was a "snitch." (*Id.*, ¶ 5.) The Court finds that this states a claim under the Eighth Amendment. The Tenth Circuit has held that labeling an inmate a snitch and informing other inmates of that label with knowledge of the obvious risk of danger associated with that label violates the Eighth Amendment. *See Benefield v. McDowall*, 241 F.3d 1267, 1271-72 (10th Cir. 2001); *see also Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (reversing the district court and finding that the plaintiff adequately alleged that, by labeling him a snitch, the prison deputy "intended to do harm . . . by inciting inmates to beat him"). The Tenth Circuit further held that "allegations of a prison officer's deliberate

disclosures of dangerous information about an inmate's status" can sufficiently state a claim under the Eighth Amendment. *See Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. 2008) (unpublished). Referring to Mr. Wilson's PREA complaints in front of other inmates raises an objective danger that Mr. Wilson will be labeled a snitch or informant. Further, Mr. Wilson adequately alleges that Defendant O. Soto knew what he was doing. (*See* Dkt. #1 at 7, ¶ 4 ("Soto was absolutely aware of this and his action was intentional. He winked and smiled and plaintiff. Then riled up the pod.").) It was clearly established well before 2021 that a prison official violates the Eighth Amendment when he displays deliberate indifference to "conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Thus, Defendant O. Soto is not entitled to qualified immunity at this early stage in the proceedings.

The other incident described in the Prisoner Complaint that may give rise to Eighth Amendment liability occurred in July 2021. Mr. Wilson tells a confusing story. Apparently, Defendants Larimore, Stice, Trujillo, Sgt. Soto, and Harris conspired to pit two other Black inmates, not Mr. Wilson, against each other so they could get them removed from the facility. (Dkt. #1 at 8, ¶¶ 8–9.) This upset Mr. Wilson, who reported it to Defendant Trujillo. (*Id.,* ¶ 10.) Defendants Larimore and Sgt. Soto then told the two inmates to attack Mr. Wilson instead, which they did on July 25, 2021, which resulted in several injuries. (*Id.* at 9, ¶ 11.) The Court finds that this states a claim against Defendants Larimore and Sgt. Soto, as instructing one inmate to attack another plainly violates the Eighth Amendment. *See Randle v. Alexander*, 960 F. Supp. 2d 457, 474 (S.D.N.Y. 2013) ("[A] a forced fight serves no penological purpose and reflects indifference to inmate safety, if not malice toward those forced to engage in the illicit

violence.").

However, Defendants Stice and Harris are only alleged to have encouraged fights between two other inmates, which would not have any effect on Mr. Wilson's immediate safety, and Defendant Trujillo was informed that these inmates were in danger, not Mr. Wilson. Mr. Wilson's allegation that Defendants Stice, Harris, and Trujillo "failed to restore official control over a tumultuous cellbock" is not sufficient to state a claim.

Accordingly, the Court recommends that Mr. Wilson's Eighth Amendment deliberate indifference/failure to protect claim proceed only against Defendants O. Soto, Sgt. Soto, and Larimore, and be dismissed as to all other Defendants.

**b. First Amendment Retaliation**

In the First Amendment context, the Supreme Court has acknowledged that "federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted). To state a First Amendment retaliation claim against a government official, a plaintiff must allege:

> (1) that he was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

"[Prison] officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

Mr. Wilson alleges Defendants O. Soto, Bitton, Larimore, Sgt. Soto, Trujillo, Wallace, Harris, Stice, and Long retaliated against him for filing lawsuits, grievances and PREA complaints.

The Court agrees with Defendants that Mr. Wilson's claim fails as to Defendants Wallace and Long, who are only alleged to have subjected him unspecified "reprisals." Defendant Merritt, for her part, is not alleged to have caused Mr. Wilson any injury or harm at all.

As to Defendant O. Soto, Mr. Wilson alleges that he tried to influence Defendant Merritt's decisions (in some unspecified way) because of Mr. Wilson's lawsuits against the CDOC. (*See* Dkt. #1 at 8, ¶ 6.) While Mr. Wilson has a clearly established constitutional right to file lawsuits, *see Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010), he does not allege that he was harmed by Defendant O. Soto's nebulous attempts to "influence" Defendant Merritt's "decisions," or that this would chill a person or ordinary firmness from continuing to pursue litigation. This claim fails.

Mr. Wilson also alleges that Defendants Larimore, Sgt. Soto, Bitton, Trujillo, Harris, and Stice violated his First Amendment rights. (*See* Dkt. #1 at 8, ¶ 7.) Although not stated outright, the Court reads the Prisoner Complaint to allege that the constitutionally protected activity was filing PREA reports, which the Court agrees is a protected activity. *See Johnson v. Whitney,* 723 F. App'x 587, 594 (10th Cir. 2018) (filing of a grievance qualifies as protected activity); *see also Granger v. Santiago*, No. 3:19-CV-60 (MPS), 2021 WL 4133752, at *5 (D. Conn. Sept. 10, 2021) ("Filing of a PREA complaint is protected activity, for the same reason that filing of prison grievances constitutes protected activity."). Mr. Wilson then alleges that these

Defendants "subjected the plaintiff to conditions and practices of constant reprisals[,] beatings, threats of beating and particularly repressive tactics in retaliation. Each expressly stated their disdain and contempt for my legal activities and intent to have me terminated from the program . . . ." (Dkt. #1 at 8, ¶ 7.) However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Mr. Wilson fails to do with respect to Defendants Trujillo, Bitton, and Harris. Defendant Trujillo is merely alleged to have received complaints from Mr. Wilson; she is not alleged to have taken any specific retaliatory actions in response. Mr. Wilson's allegations regarding Defendant Bitton are conclusory and implausible—there are no specific allegations how this "clinician" somehow assaulted or had other inmates assault Mr. Wilson. And the Court will address the allegations regarding Defendant Harris below.

The Court does find, however, that Mr. Wilson does state a First Amendment retaliation claim against Defendants Sgt. Soto, Larimore, and Stice. Sgt. Soto is alleged to have told inmates to jump Mr. Wilson because Mr. Wilson filed grievances against him and reported misconduct to Defendant Trujillo. (Dkt. #1 at 9, ¶ 11.) This satisfies all three elements of a retaliation claim.

Mr. Wilson goes on allege that Defendants Stice and Larimore shook down his cell and destroyed his property 29 times in a 45-day period and promised to do so "every time I file a grievance, 'snitched' to mental health etc." (*Id.*, ¶ 13.) These allegations are also sufficient to survive a Rule 12(b)(6) attack.

Mr. Wilson further claims that Defendant Larimore "wrote a perjurous [sic] write-up of the assault against me . . . because I continued to voice my complaint, write grievances and call PREA." (*Id.* at 10, ¶ 19.) As a result, he was charged $200 and "subjected to one year in solitary confinement, suffering excruciating mental pain from isolation." (*Id.*, ¶ 19–20.) The Court finds that this claim should not be dismissed at his stage. Retaliation for exercising a protected right to file grievances that includes being fined and wrongfully placed in segregation would "chill" a person of ordinary firmness from continuing file complaints and reports. *See, e.g., Banks v. Katzenmeyer*, 645 F. App'x 770, 773 (10th Cir. 2016) (unpublished) ("The allegation of multiple 'fabricated' write-ups within a short period of time presents a sufficient allegation of injury to satisfy the 'chill' test.").

Finally, Mr. Wilson also alleges that to humiliate him, Defendant Stice, Harris, and Larimore "forced me to intake to be strip searched, and deprived of sleep for 10–15 hours, simply for seeking mental health services." (*Id.*) But Mr. Wilson does not explain what "seeking mental health services" entails such that the Court can find that he is describing a constitutionally protected activity, so this claim fails.

**RECOMMENDATION**

Accordingly, it is hereby **RECOMMENDED** that:

- Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. #25) be

   **GRANTED IN PART** and **DENIED IN PART** as follows:

   o **GRANTED** as to the Eighth Amendment excessive force claim against Defendants Stice, Larimore, and Harris;

- o **GRANTED** as to the Eighth Amendment deliberate indifference/failure to protect claim against Defendants Williams, Novotny, O. Soto, Merritt, Bitton, Trujillo, Wallace, and Long;

- o **GRANTED** as to the First Amendment retaliation claim against Defendants Bitton, Trujillo, Wallace, Harris, and Long;

- o **DENIED** as to the Eighth Amendment deliberate indifference/failure to protect claim against Defendants O. Soto, Sgt. Soto, and Larimore; and

- o **DENIED** as to the First Amendment retaliation claim against Defendants Sgt. Soto, Larimore, and Stice.

- Plaintiff's "Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order" (Dkt. #47) be **DENIED**.

- Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. #54) be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colo. Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated:     July 28, 2022
           Denver, Colorado              _____
                                         N. Reid. Neureiter
                                         United States Magistrate Judge