IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-03207-CMA-SBP

TERANCE-DEJUAN WILSON,

    Plaintiff,

v.

OSVALDO SOTO, C.S.P.,
CO. NATHAN LARIMORE, C.C.P.,
SGT. SOTO, C.C.F., and
SGT. STICE, C.C.F.,

    Defendants.

---

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendants Osvaldo Soto, Robert Soto, Jacob Stice, and Nathan Larimore's Motion for Summary Judgment.[1] (Doc. # 126.) For the reasons explained below, the motion is GRANTED.

### I.    BACKGROUND

Plaintiff Terance Wilson is a Colorado Department of Corrections ("CDOC") inmate currently serving a thirty-two-year sentence for criminally negligent homicide and second-degree assault. (Doc. # 126 at 1.) Defendants—Corrections Officer Nathan

---

[1] All other Defendants were dismissed pursuant to Doc. # 99.

Larimore, Corrections Officer[2] Jacob Stice, Dr. Osvaldo Soto ("Dr. Soto"), and Sgt. Robert Soto ("Sgt. Soto")—are all CDOC employees. Ofc. Larimore, Ofc. Stice, and Sgt. Soto are CDOC corrections staff of varying ranks, and Dr. Soto is a CDOC-affiliated healthcare provider. (Doc. # 100 at 3–4.)

This case arises from Mr. Wilson's allegations of unconstitutional prison conditions between April 2021 and August 2021. During those four months, Mr. Wilson claims that Defendants created "hostile environments" that encouraged other inmates to assault him in retaliation for his previous uses of the CDOC inmate grievance system. *See, e.g.*, (Doc. # 1 at 7.) Mr. Wilson alleges—and Defendants dispute—that said "hostile environments" consisted of the following incidents:

(1) in late April 2021, Dr. Soto discussed Mr. Wilson's confidential complaint (filed under the Prison Rape Elimination Act ("PREA")) in Mr. Wilson's pod loudly, with the apparent goal of being overheard, which supposedly inspired eavesdropping inmates to assault him later;

(2) in late July 2021, to punish him for filing grievances, Sgt. Soto instructed two inmates to attack Mr. Wilson;

(3) in a forty-five-day period, to punish him for filing grievances, Ofcs. Stice and Larimore shook down Mr. Wilson's cell twenty-nine times; and

(4) in retaliation for Mr. Wilson's use of the grievance process, Ofc. Larimore lied about assaults perpetuated on Mr. Wilson in written incident reports. *Id.* at 7–10.

The record, however, tells a different story—notwithstanding Mr. Wilson's conclusory arguments to the contrary.[3] The following facts are undisputed. On June 16,

---

[2] Although the caption refers to Jacob Stice as a sergeant, Defendants refer to him as a corrections officer. The Court opts for the title provided by Ofc. Stice's employer.

[3] Mr. Wilson makes what the Court construes to be objections to the record, all of which are contradicted by the same record. Mr. Wilson's contends that facts 17 and 18 rest on an

2021, Mr. Wilson filed Grievance No. 00193815 ("the '815 grievance") to report Dr. Soto's allegedly purposeful public disclosure of Mr. Wilson's PREA complaint. (Doc. # 126-1 at 2; Doc. # 126-3 at 1, 5.) At step 1, the '815 grievance was denied on procedural grounds. (Doc. # 126-3 at 1 (deeming it untimely and noting that it failed to state the basis for the grievance or select a remedy).) Mr. Wilson responded with a step 2 '815 grievance, which again complained about Dr. Soto and added a new request: that Dr. Soto's superiors "step up first & hold [him] accountable." *Id.* at 3, 6. Construing the phrase as a new requested remedy, Mr. Wilson's step 2 grievance was denied in part but also granted in part "[because] all staff are supervised and held to professional standards of conduct." *Id.* at 3. Mr. Wilson appealed the partial denial with a step 3 '815 grievance that again requested a new remedy—this time, a polygraph test. *Id.* at 4. The step 3 '815 grievance was denied on procedural grounds because Mr. Wilson "failed to follow the grievance procedure in this matter" by "fail[ing] to satisfactorily request allowable relief" and "introduc[ing] a different remedy" yet again. *Id.*; *but cf.* (Doc. # 127 at 20 ("No [grievant] will be entitled to a polygraph examination as their 'right.'")). Because the step 3 '815 grievance was denied on procedural grounds, the written

---

impermissibly conclusory declaration, which is incorrect—the declaration contains sufficient foundation and is directly supported by the appended grievances. *See id.* at 7; *but cf. id.* at 3. The Court notes that this is not the first time that Mr. Wilson has asserted impermissibly conclusory factual assertions to this Court. *See* (Case No. 19-cv-02279-CMA-NRN, Doc. # 253, at 3–4.) Further, although several statements from Mr. Wilson's response could also be construed as objections, they make no explicit assertion, so they require no serious consideration. See (Doc. # 127 at 1–2) (objecting to facts 8, 9 and 11 by quoting them verbatim and underlining particular phrases without explaining what the annotations mean); *see also id.* at 3–6, 9–18, 23–35 (attaching multiple exhibits without articulating an actual assertion).

response explicitly instructed Mr. Wilson that he failed to exhaust his administrative remedies. (Doc. # 126-3 at 4.)

On August 19, 2021, Mr. Wilson filed Grievance No. 00196716 ("the '716 grievance"), which claimed that Sgt. Soto and Ofc. Larimore instructed two other inmates to attack Mr. Wilson and, despite knowing of the risk, one Lieutenant Mindi Trujillo failed to intervene. (Doc. # 126-1 at 3; Doc. # 126-4 at 1.) As a remedy, Mr. Wilson requested "an external investigation." (Doc. # 126-4 at 4.) Mr. Wilson's step 1 '716 grievance was denied for two reasons. First, based on the security camera footage, Mr. Wilson appeared equally at-fault for the fight and, second, an external investigation is not a remedy available through the grievance system. *Id.* at 1; *see* (Doc. # 127 at 27) (suggesting use of the prison "kite" system to request action from CDOC's Office of Inspector General). In response, Mr. Wilson filed a step 2 grievance focused primarily on criticizing the CDOC employee that reviewed his step 1 grievance. *See, e.g.*, (Doc. # 126-4 at 2 ("[Captain] Mc[L]ean is obviously ignorant and incompetent and[,] in these capacities[,] he is incapable of a review or any competent response.").) Alongside this rebuke, the step 2 grievance demanded a new remedy: an external agency investigation of this Captain McLean and a hearing about the inmate attack. *Id.* The new remedy request and the new complaints about the step 1 grievance, however, violated the grievance rules and resulted in another procedural denial. Mr. Wilson appealed with a step 3 grievance. This time, he complained of a "pattern, practice, [and] custom of unaccountability" by CDOC staff and, as a remedy, demanded that he be polygraphed. *Id.* at 3. The step 3 grievance was denied on procedural grounds because

Mr. Wilson previously complained of this issue in a separate grievance, and the grievance policy forbids "reiterat[ing] issues which have previously been grieved" via a new grievance. *Id.* at 3. As with the '815 grievance, the '716 grievance's step 3 procedural denial meant that Mr. Wilson failed to exhaust administrative remedies. *Id.*

### A.     MR. WILSON FILES SUIT IN THIS COURT

On November 29, 2021, Mr. Wilson initiated this lawsuit, *pro se*,[4] pleading constitutional claims arising from the incidents alleged in the '815 and '716 grievances. *See* (Doc. # 1.) As of February 13, 2023, only the following claims remain pending:

- As to Dr. Soto, Eighth Amendment deliberate indifference and failure to protect claims because of Dr. Soto's allegedly purposeful public disclosure of Mr. Wilson's PREA report;

- As to Sgt. Soto, Eighth Amendment deliberate indifference and failure to protect claims over allegedly instructing two inmates to attack Mr. Wilson;

- As to Sgt. Soto, a First Amendment retaliation claim for allegedly requesting the aforementioned attack in retaliation for Mr. Wilson filing grievances about Sgt. Soto's alleged misconduct;

- As to Ofcs. Stice and Larimore, a First Amendment retaliation claim over allegedly shaking down his cell twenty-nine times in a forty-five-day period in response to Mr. Wilson's grievances; and

- As to Ofc. Larimore, a First Amendment retaliation claim for allegedly submitting a false write-up of an assault perpetuated on Mr. Wilson in direct retaliation for Mr. Wilson filing grievances against Ofc. Larimore.

---

[4] The Court reviews a *pro se* plaintiff's filings "liberally and hold[s] [them] to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). That said, *pro se* status does not entitle a litigant to the application of different rules or the Court's substantive assistance. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002); *see, e.g.*, *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

On October 9, 2023, Defendants filed the instant motion seeking summary judgment on Mr. Wilson's remaining claims. (Doc. # 126.) In short, Defendants' motion argues that summary judgment is appropriate because (1) Mr. Wilson failed to exhaust administrative remedies with respect to his Eighth Amendment claims and one First Amendment claim against one Defendant and (2) Mr. Wilson has no evidence to prove retaliatory motive and thus cannot prove that Defendants violated his First Amendment rights. *Id.* at 11, 13–14.[5] A ten-day jury trial is set to begin September 16, 2024. (Doc. # 143.)

## II.   APPLICABLE LAW

**A.   SUMMARY JUDGMENT**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 118 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable

---

[5] Defendants technically argue for dismissal by asserting that Mr. Wilson's insufficient evidence of First Amendment retaliation cannot overcome the presumption of qualified immunity. However, the Court need not address the qualified immunity issue because Rule 56 alone provides sufficient grounds to dismiss Mr. Wilson's First Amendment claims.

6

inferences from that evidence. *Id*. However, the Court does not necessarily conduct a credibility analysis when it refuses to consider conclusory statements, because statements based on mere conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Under Rule 56, the moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant must point the court to a lack of evidence for the other party on any essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

**B.    ADMINISTRATIVE EXHAUSTION**

The Prison Litigation Reform Act ("PLRA") requires the exhaustion of all available administrative remedies before an inmate may file a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement is without exception, so binding precedent "reject[s] every attempt to deviate . . . from [the PLRA's] textual mandate." *Ross v. Blake*, 578 U.S. 632, 635, 639 (2016); *see also Booth v. Churner*, 532 U.S. 731 (2001) (requiring exhaustion irrespective of whether the applicable administrative grievance procedure allows the requested relief). Failure to exhaust is an affirmative defense that must be proven by the defendant(s). *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (citation omitted). Once a defendant proves failure to exhaust, the burden then shifts to the plaintiff "to show that remedies were unavailable to him." *Id*.

### III.    ANALYSIS

The Court finds that Mr. Wilson failed to exhaust his administrative remedies because his repeated failure to follow the inmate grievance policy resulted in procedural denials of both the '815 and '716 grievances at step 3. The Court also finds Mr. Wilson's declaration consists of nothing but conclusory assertions. As such, Mr. Wilson has not demonstrated that there are any disputes of material fact relating to his First Amendment retaliation claim. Consequently, the Court finds it appropriate to enter summary judgment on all Mr. Wilson's remaining claims in favor of Defendants.

### A.  MR. WILSON FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants first argue that Mr. Wilson failed to exhaust his administrative remedies with respect to his Eighth Amendment claims against all defendants and his First Amendment claim against Sgt. Soto. (Doc. # 126 at 11.)

The Supreme Court has made it abundantly clear that the PLRA requires administrative exhaustion in accordance with the rules of the applicable inmate grievance policy. *E.g.*, *Blake*, 578 U.S. at 639. In the instant case, the undisputed facts establish that Defendants complied with the CDOC grievance policy as it is written, but Mr. Wilson did not. The grievance policy is clear. Grievances requesting disallowed remedies will be denied on procedural grounds. (Doc. # 126-2 at 1.) Disallowed remedies include demands that CDOC employees be disciplined or that anyone—CDOC staff or any inmate, including themselves—undergo a polygraph examination. (Doc. # 126-2 at 1); *see* (Doc. # 127 at 20) ("No individual, accused, or accusers[ ] will be entitled to a polygraph examination as their 'right.'"). Yet, in the '815 grievance, Mr. Wilson demanded the disciplining of CDOC employees and a polygraph test. *See, e.g.*, (Doc. # 126-3 at 1, 3–4.) For that reason, his step 3 '815 grievance was denied on procedural grounds. *Id.* at 4. Similarly, in the '716 grievance, not only did Mr. Wilson demand impermissible remedies, but he also raised more than one problem/complaint.[6] (Doc. # 126-4 at 1–3.) Consequently, the step 3 '716 grievance was also procedurally denied. (Doc. # 126-4 at 1–3.) "An inmate who begins the grievance process but does

---

[6] "Each grievance will address only one problem or complaint and include a description of the relief requested." (Doc. # 126-2 at 4, ¶ 6.)

9

not complete it is barred from pursuing a [federal] claim under the PLRA for failure to exhaust his administrative remedies." *Fields v. Okla. State Pen.*, 511 F.3d 1109, 1112 (10th Cir. 2007) (quotation omitted). Because procedural denial does not exhaust administrative remedies, Defendants have conclusively shown that Mr. Wilson failed to exhaust his administrative remedies.

Nestled within Mr. Wilson's response, the Court was able to infer two arguments contesting the dismissal of his claims, but neither is persuasive. For one, Mr. Wilson appears to contend that, if the grievance policy does not allow certain remedies to be requested, then his complaint is exempt from the PLRA's exhaustion requirement.[7] Mr. Wilson's argument, however, was considered and rejected by the United States Supreme Court in 2001. *See Booth v. Churner*, 532 U.S. 731, 738–41 (2001) (requiring exhaustion even for remedies that the administrative process cannot provide). Mr. Wilson's remaining arguments are either foreclosed by applicable law, fail for lack of proof, or are insufficiently detailed to make a cognizable point.[8] He accuses Defendants of somehow manipulating the grievance policy by placing him under a grievance filing restriction. *See* (Doc. # 127-1 at 3, 5); *see generally* (Doc. # 128-1 at 2–3) (explaining the grievance restriction rules and that Mr. Wilson was placed on such a restriction for

---

[7] In support thereof, Mr. Wilson attaches twenty-one grievances to his response—without any explanation to clarify his point. (Doc. # 127 at 9–18, 23–35.) He also submits his own declaration, which includes both factual assertions and fifty-four citations to legal authorities. *See* (Doc. # 127-1 at 3–5.)

[8] None of Mr. Wilson's appended grievances are related to the '815 or '716 grievances or the issues of which they complain, which is the salient issue for purposes of this litigation. The Court does not know what to make of the grievances that are stricken-through and inexplicably labeled "VOID." (Doc. # 127 at 9–18, 23–35.)

filing multiple procedurally deficient grievances). However, Mr. Wilson offers no explanation as to what was improper about his grievance filing restriction. To the contrary, the myriad unrelated grievances that he provided prove that he earned the restriction by repeatedly filing grievances that were procedurally denied for noncompliance with the grievance policy rules. (Doc. # 128-4 at 2–3); *see, e.g.*, (Doc. # 127 at 23–25). Thus, Mr. Wilson's argument, as it currently stands, amounts to the lone conclusion that his grievance restriction was improper. Without more, the record does not support a finding that Defendants are manipulating the grievance process.

Next, Mr. Wilson provided a list of fifty-four case citations without any explanation or parentheticals as to their relevancy. The Court cannot and will not attempt to divine Mr. Wilson's reasoning from a listing of vague legal citations—that is his responsibility. To the extent Mr. Wilson's argument is that these cases offer him some sort of exception to the exhaustion requirement based on his circumstances, *Blake* incontrovertibly establishes that no special circumstances can excuse failure to exhaust. Without more, Mr. Wilson failed to meet his burden of "show[ing] that remedies were unavailable to him."[9]

Consequently, the Court finds that Mr. Wilson failed to exhaust his administrative remedies. Defendants are thus entitled to summary judgment on their affirmative

---

[9] The Court notes that most of Mr. Wilson's cases are irrelevant—forty-five cases are from outside this district and interpret non-CDOC grievance policies. Of the eight that are binding precedent, all of them predate *Ross v. Blake*, which reiterated in the strongest possible terms that the PLRA forbids judicially created exceptions to the exhaustion requirement. *Blake*, 578 U.S. at 639.

defense of exhaustion. As such, Mr. Wilson's Eighth Amendment claims against all Defendants and his First Amendment claim against Sgt. Soto are dismissed.

**B.     PLAINTIFF CANNOT PROVE A FIRST AMENDMENT VIOLATION**

Mr. Wilson's First Amendment retaliation claims fare no better than his Eighth Amendment claims, albeit for a different reason: he has no evidence to support one of the three necessary claim elements. A successful First Amendment retaliation claim requires evidence of (1) the claimant engaging in an activity protected by the First Amendment, (2) actions by the defendant that caused injury sufficient to chill a person of ordinary firmness from reengaging in said protected activity, and (3) evidence of said defendant's substantial motivation to retaliate against the plaintiff because engaged in protected activity. *E.g.*, *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). All three elemental showings are required. *Id.* Showing substantial motivation requires proof that the defendant's actions would not have occurred "but for" the plaintiff's involvement in constitutionally protected activity. *E.g.*, *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990). The proof must be specific. *E.g.*, *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990). As always, the proof must be based on **admissible** evidence sufficient to create a genuine dispute of material fact. *Cf. Bird v. W. Valley City*, 832 F.3d 1188, 1194 n.1 (10th Cir. 2016) (citing Fed. R. Civ. P. 56(c)(2)). If the plaintiff relies on affidavits—*i.e.*, declarations—said affidavits must demonstrate personal knowledge, capacity, and admissibility. Fed. R. Civ. P. 56(e)(2). Thus, to survive summary judgment using affidavits as evidence, the affidavits must offer sufficient detail to go beyond mere conjecture, speculation, or subjective belief.

*See Honeywell*, 366 F.3d at 875; *see also Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999).

Defendants argue that they are entitled to summary judgment because Mr. Wilson has not come forward with any admissible evidence establishing that the Defendants retaliated against him. (Doc. # 126 at 12–13.) Mr. Wilson, in response, insists that his response brief's legal arguments "consistently allege and complain of a retaliatory motive" and that his appended declaration is sufficient evidence to create a dispute of material fact. (Doc. # 127-1 at 2–3; Doc. # 127-2.)

Mr. Wilson's counterargument, however, rests on the incorrect premise that **conclusory statements** of retaliatory motive equate to **facts** demonstrating retaliatory motive. His declaration consists of quotes without context and conversations without locations or dates. *E.g.*, (Doc. # 127-1 at 1–2.) Such scant detail makes Mr. Wilson's declaration too conclusory to survive a formal objection at trial. Beyond his own affidavit, Mr. Wilson has not submitted any other evidence of retaliatory motive. Without evidence of retaliatory motive, Mr. Wilson's First Amendment claims raise no dispute of material fact as to whether a constitutional violation occurred. Thus, Defendants Dr. Soto, Ofc. Larimore, and Ofc. Stice. are entitled to summary judgment on Mr. Wilson's First Amendment claims.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants Osvaldo Soto, Robert Soto, Jacob Stice, and Nathan Larimore's Motion for Summary Judgment (Doc. # 126) is GRANTED.

Because no claims remain, it is FURTHER ORDERED that Plaintiff Terance Wilson's action is DISMISSED WITH PREJUDICE. The Trial Preparation Conference set for September 5, 2024, and the ten-day jury trial set for September 16, 2024, are both VACATED. The Clerk of the Court shall enter final judgment in favor of Defendants and against Plaintiff.

DATED: July 11, 2024

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge